SMITH et al. v. TEXAS & N. O. R. CO.

No. 121.

District Court, W. D. Louisiana,
Opelousas Division.

May 9, 1940.

Welton P. Mouton, of Lafayette, La.,
for plaintiffs.

Debaillon, Bailey & Mouton, of Lafayette, La., for defendant.

PORTERIE, District Judge.

This is a suit brought under the provisions of the Railway Labor Act, 45 U.S.C.A. § 153, subd. First (p), for recovery of back wages alleged to be due by the defendant to its former employee, W. S. Smith, who died while being represented by his group in a dispute. His two children of age file this suit, claiming to have inherited his interest.

Plaintiffs seek, by "injunction, mandamus or other appropriate decree", to have the court order defendant to comply with Award No. 348 of the National Railroad Adjustment Board, Third Division.

Generally, plaintiffs aver that their father, for many years immediately preceding his death, was employed by the Texas and New Orleans Railroad Company at Broussard, Louisiana, as an agent-telegrapher; that on April 16, 1930, the office and station employees of the defendant company entered into an agreement with the defendant relating to wages, hours and working conditions of employees, including plaintiffs' father, under the terms of which contract Smith was entitled to receive the amount of approximately $150 per month; that on March 1, 1932, the defendant company, by unilateral action, abolished the office of agent-telegrapher at Broussard, Louisiana, and at about fifty other such stations, and substituted in lieu of such positions small non-telegraph agency positions at materially reduced salaries; that their father was required to perform the same duties as formerly and that the action of the railroad company was unauthorized and in violation of the contract of April 16, 1930; and that the defendant company is indebted for the full salary cut.

It is further alleged in the complaint that attempts were made to adjust the dispute which arose between the railroad company and its employees, but to no avail; that finally the matter was submitted to the National Railroad Adjustment Board, an administrative board created under the provisions of the Railway Labor Act, which rendered an award in favor of the employees, directing the reestablishment of the positions abolished, the reinstatement of the employees affected, with reimbursement for all back salary; that on the application of the parties, the Board later rendered an interpretation of its award, which reiterated the orders made by it in favor of the employees; that the defendant company did not carry this into effect,

but executed an agreement with the Order of Railroad Telegraphers in compromise and settlement, under the terms of which compromise their father was "not restored the pay cut inflicted."

Defendant company filed a motion to dismiss, alleging that the complaint does not set out a claim upon which relief can be granted. As a basis for this motion defendant averred that:

(a) The complaint is based upon the provisions of the Railway Labor Act, and is for the enforcement of the award rendered by the National Railroad Adjustment Board insofar as such award ordered the payment of money; that an award of the Board is not enforceable unless and until put into effect by an order of the Board, specifically directing the carrier to comply with the order, and where a money award has been made, directing the carrier to pay such sums on or before a day named; that the act requires that the petition expressly set out the order, and the language of the act shows that the only action which can be brought is one based on the order and not on the award; that the complaint here shows no such order was ever rendered.

(b) Alternatively or cumulatively, that while matters were thus pending the entire dispute was compromised; that it is now too late for the Board to render the requisite order; that plaintiffs base their rights on an original contract, the result of collective bargaining, and are bound by the compromise contract of July 20, 1937, which was likewise the result of collective bargaining between the same parties; that under the terms of this latter contract plaintiffs have no rights.

We give a concise chronology of the main events involved in this case. The original contract between the employer and employees was dated April 16, 1930; the pay cut occurred in March, 1932; Smith died January 13, 1936 (while still an employee); the award by the Board was made November 17, 1936; interpretation of the award was made by the Board on April 19, 1937; the compromise between the employing company and the employees was entered into on July 20, 1937; and this suit was filed July 15, 1939.

■ The pleadings and the exhibits disclose that plaintiffs have failed to comply with the provisions of the Railway Labor Act, 45 U.S.C.A. § 153, subd. First, paragraphs (m), (n), (o), (p) and (q), because the prescribed steps have not been taken to have an order issued to make the award effective in their favor. This is necessary before plaintiffs have a *right* of action, and before jurisdiction is established.

■ It follows quite simply, therefore, that the suit of plaintiffs is at least premature; then, it becomes likewise evident that plaintiffs have no longer the right to appear before the Board seeking an order based upon the award because the representatives of the employees (and Smith is included) have settled, in compromise, all matters concerned with the dispute. The motion to dismiss because no relief can be granted the plaintiffs is good.

The children of Smith are not asserting rights under any individual contract that their father may have had with the railroad. The award shows that the contract of April 16, 1930, upon which plaintiffs base all of their claims, was entered into between the Order of Railroad Telegraphers (O.R.T.), as the accredited representative of all the employees, and the defendant company. The dispute arising out of the action of the railroad company was between the Order of Railroad Telegraphers and the defendant; the proceedings before the Adjustment Board were initiated and carried on by the Order of Railroad Telegraphers, and the award of the Board was rendered as a result of the efforts of the same organization. The compromise contract of July 20, 1937, was executed by the Order of Railroad Telegraphers and the Texas & New Orleans Railroad Company—the same parties who executed the original contract of April 16, 1930.

The two children of the deceased employee, the plaintiffs now before us and of age, neglected to advise and consult with the representatives of the Order of Railroad Telegraphers before the compromise agreement was had, with the view of protecting specially the rights, if any, of their deceased father. The jurisprudence is persuasive that they were on notice and were represented; and, therefore, their rights were decided at the compromise between the employees as a group and the carrier. See Estes et al. v. Union Terminal Co., 5 Cir., 89 F.2d 768.

■ Further, examining carefully the complaint of plaintiffs in order to determine if there be any allegation that would maintain a cause and a right of action,

outside of the provisions of the Railway Labor Act, we find that this may only be in paragraph (e) of the prayer, to-wit: "That this Court grant the plaintiffs such other and further relief as they may be found to be entitled to have in the premises, whether at law or in equity."

The answer as to whether or not plaintiffs are to have a cause or right of action under this general prayer for legal and equitable relief is to be found in the compromise agreement. Assuming, without deciding, that Smith's rights have passed to his children, the question is whether or not, under the provisions of the compromise, the rights have been lost through collective bargaining.

The applicable provision appears in paragraph 8(a) of the memorandum of agreement between the Texas & New Orleans Railroad Company, the present defendant, and the Order of Railroad Telegraphers, which reads:

"8. Retroactive adjustments under Award No. 348 will be made as follows:

"(a) Employees who were filling positions under the telegraphers' agreements at the stations named in Award No. 348 at the time such positions were reclassified from that of agent or agent-telegrapher to small non-telegraph agent, and whose names appear on the official seniority lists of telegraphers as of January 1, 1930, and *who now hold the status of employee,* will be compensated for any wage loss resulting from such change, the computation of such wage loss to commence with the date the reclassification of the station was made effective and to end with March 31, 1937." (Italics supplied.)

It may be apparently harsh, but the clause "who now hold the status of employee" bars the original employee, Smith, and his legal representatives, likewise, because, at the time of this compromise (June 20, 1937), Smith did not have the status of an employee, having died on January 13, 1936. In the collective bargain made, his interests were overlooked. Smith's rights were created and originated under the Railway Labor Act, were continued by virtue of its provisions, and likewise were subject to extinguishment by the same law. The court is unable to recreate his rights. Therefore, we do not find a cause or right of action under the closing paragraph (e) of plaintiffs' petition.

Let us think of the equity. Collective bargaining extends favor to the group of employees, because the employees represent a store of gathered experience, are experts in their specialty. Through their future service, they represent training and efficiency to the carrier. Smith at the time of the compromise was dead; he did not represent this prospective helpful service; under this concept he was not entitled to any restoration of pay cut.

The motion to dismiss is sustained.